**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ALEJANDRO TORRES GONZALEZ,

Plaintiff,

v. No. 2:26-cv-1126 DLM/JHR

BITCO GENERAL INSURANCE CORPORATION; SAM GUTIERREZ,

Defendants.

**MEMORANDUM OPINION AND ORDER**

This lawsuit arises out of a motor vehicle accident. Plaintiff Alejandro Torres Gonzalez, who sustained injuries and damages from a collision with a non-party, brings suit against his insurer Defendant BITCO General Insurance Corporation (BITCO), as well as Defendant Sam Gutierrez, a claims manager at BITCO. He alleges that the non-party motorist was negligent and that BITCO has breached the insurance contract by failing to compensate him under his UIM coverage. He also asserts that the Defendants acted in bad faith and violated statutory law.

Defendants removed this case to federal court and moved to dismiss all five counts in the complaint under Rule 12(b)(6), the breach of contract claim as unripe under Rule 12(b)(1), and the unfair trade practices claim under Rule 9(b). (*See* Docs. 1; 5.) For the reasons below, the Court **GRANTS** Defendants' motion, but will allow Gonzalez to amend his complaint within 30 days.

## I. Legal Standards

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). Detailed factual allegations are not required, but more is required than "labels," "conclusions," or "a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The Court will "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation omitted).

A ripeness challenge, on the other hand, implicates the Court's subject matter jurisdiction and is analyzed under Rule 12(b)(1). *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (citations omitted). A party may bring a motion under Rule 12(b)(1) as either a facial or factual attack. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). Here, Defendants bring a facial attack to the ripeness of Gonzalez's breach of contract claim, so the Court "assumes the allegations in the complaint are true" and must determine whether "they fail to establish jurisdiction." *Id.* (citation omitted). "The ripeness doctrine aims to prevent courts from entangling themselves in abstract disagreements by avoiding premature adjudication." *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (quotation marks and citation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotation marks and citation omitted).

## II. Factual Background

### A. Gonzalez's Complaint[1]

On June 5, 2020, Gonzalez was driving on New Mexico State Highway 18, when Rojelio Hernandez (Tortfeasor) hit the back of Gonzalez's vehicle, causing Gonzalez's vehicle to flip end over end. (Doc. 5-1 ¶¶ 11–13.) Tortfeasor had been driving at a high rate of speed and weaving in and out of traffic, and Gonzalez "was unable to avoid the collision or control or prevent the rollover." (*Id.* ¶¶ 12,15). As a result of the accident, Gonzalez suffered damages including medical expenses, loss of enjoyment of life, and lost income. (*Id.* ¶ 17.)

BITCO provided uninsured/underinsured motorist benefits to Gonzalez under Policy Number CAP 3 685 494 B, which included underinsured motorist (UIM) coverage in the amount of $1,000,000 per accident. (*Id.* ¶ 3, 14.) On December 4, 2023, Gonzalez, through counsel, "notified BITCO of a likely UIM claim and provided a spreadsheet of [Gonzalez's] medical expenses." (*Id.* ¶ 18 (citing Doc. 5-1-1).) On December 7, 2023, Gonzalez's attorney again contacted BITCO, seeking BITCO's consent to accept a settlement from Tortfeasor's insurance company. (*Id.* ¶ 19 (citing Doc. 5-1-1).) Defendant Guiterrez, a claims manager for BITCO, wrote back that they "needed more time and more information to evaluate the claim." (*Id.* (citing Doc. 5-1-1).) On December 8, 2023, Gonzalez sent Defendants "all relevant medical information and deposition testimony." (*Id.* ¶ 20 (citing Doc. 5-1-1).) On December 14, 2023, Gonzalez's "counsel followed up with Defendants again to get their approval of the settlement." (*Id.* ¶ 21 (citing Doc. 5-1-1).) Guiterrez replied the next day, "stat[ing] that they need[ed] at least 30 days to review the

[1] The Court recites the facts as derived from the complaint and exhibits attached thereto and views all well-pleaded factual allegations in a light most favorable to Gonzalez. *See Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013). While the complaint was attached to the notice of removal (*see* Doc. 1-3), the Court cites to the copy of the complaint attached to Defendants' Motion to Dismiss (*see* Doc. 5-1), because only the latter document contains the original exhibits that Gonzalez refers to in his complaint.

claim." (*Id.* ¶ 22 (citing Doc. 5-1-1).) Gonzalez heard from another representative on December 28, 2023, indicating that they would get back to Gonzalez in January 2024. (*Id.* ¶ 23 (citing Doc. 5-1-1).) Gonzalez did hear back from Defendants in January 2024, at which time BITCO requested additional records and information. (*Id.* ¶ 24 (citing Doc. 5-1-1).)

Gonzalez did not receive all the additional information BITCO requested until January 17, 2025. (*Id.* ¶ 25.) "During this time, Gonzalez was still trying to finalize negotiations for the settlement with Tortfeasor." (*Id.* ¶ 26.) "[Gonzalez] also had multiple phone calls with Defendant requesting permission to settle with Tortfeasor as well as the email correspondence but still received no response." (*Id.* ¶ 27.)

Finally, "[o]n February 21, 2025, [Gonzalez] sent Defendants all of [his] medical records and bills, along with a spreadsheet breaking down the medical expenses incurred via email." (*Id.* ¶ 28 (citing Doc. 5-1-1).) The email also asked for consent to settle the claims for $900,000. (*Id.* (citing Doc. 5-1-1).) Defendants never responded to this email. (*Id.* ¶ 29.) "On March 14, 2025, [Gonazlez] accepted a settlement from Tortfeasor's insurance[,] which exhausted the available compensation benefits." (*Id.* ¶ 30.)

On December 22, 2025, Gonzalez brought this action in the Fifth Judicial Court of Lea County, New Mexico. (Doc. 1 at 1.) In Count I, he brings a negligence claim, outlining the negligence of Tortfeasor and alleging that BITCO is liable for damages caused by Tortfeasor under the policy. (Doc. 5-1 ¶¶ 36–42.) In Count II, Gonzalez brings a breach of contract claim against BITCO for failure to pay. (*Id.* ¶¶ 43–65.) In Count III, Gonzalez brings a bad faith claim against both BITCO and Gutierrez. (*Id.* ¶¶ 66–79.) In Count IV, Gonzalez brings claims under the New Mexico Unfair Insurance Practices Act (UIPA), N.M. Stat. Ann. § 59A-16-20 (*Id.* ¶¶ 80–84). And

in Count V, Gonzalez brings a claim pursuant to the New Mexico Unfair Trade Practices Act (UPA), N.M. Stat. Ann. § 57-12-1. (*Id.* ¶¶ 85–91).

### B. Additional Facts Not In the Complaint

This Court's review is ordinarily restricted to the four corners of the complaint. There are, however, three exceptions to the rule: "(1) documents attached to the complaint as exhibits, (2) documents referenced in the complaint that are central to the plaintiff's claims, provided their authenticity is undisputed, and (3) matters subject to judicial notice." *Morphew v. Chaffee Cnty., Colo.*, 172 F.4th 802, 813 (10th Cir. 2026) (quoting *Brown* v. *City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025)).

Defendants have submitted a copy of Gonzalez's insurance policy with BITCO. (*See* Doc. 6.) The policy forms the basis of Gonzalez's complaint and thus falls under the exception. Accordingly, the Court considers the coverage titled "New Mexico Uninsured Motorists Coverage – Nonstacked" endorsement (CA 31 29 10 13)" (UIM Coverage) included in that policy. (*Id.* at 36–39.) The UIM Coverage provides that BITCO "will pay all sums the 'insured' is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle'" due to bodily injury or property damage caused by the accident. (*Id.* at 36.) "Uninsured motor vehicle" is defined to include underinsured motor vehicles. (*Id.* at 39.) The UIM Coverage also provides that BITCO agrees "[w]ith respect to damages resulting from an 'accident' with [an underinsured motor vehicle]" to pay a claim only if "[t]he limit of any applicable liability . . . policies ha[ve] been exhausted by payment of judgments or settlements" or "[a] tentative settlement had been made between an 'insured' and the insurer of" an underinsured motor vehicle and BITCO has been "given prompt written notice of such tentative settlement" and has "[a]dvanc[ed] payment to the

'insured' in an amount equal to the tentative settlement within 30 days after receipt of notification." (*Id.* at 36–37.)

Gonzalez's response to the motion to dismiss also includes additional facts not found in the complaint. These facts include that Gonzalez "has incurred substantial medical expenses exceeding $1,000,000" (Doc. 12 at 2), Gonzalez "accepted an $800,000 settlement, exhausting the available compensation from tortfeasor's insurer" (*id.* at 4), Tortfeasor had $1,000,000 in liability limits (*id.* at 6), and Gonzalez's policy has two covered vehicles for which he paid separate UIM premiums (*id.* at 7). Unlike the terms in the insurance policy, these facts do not fall under any exceptions that would permit the Court to look beyond the four corners of the complaint. Accordingly, they are not considered.

## III. Analysis

### A. Negligence (Count I)

Gonzalez first brings a negligence count, which outlines the negligence of the non-party driver, Tortfeasor, and states that BITCO is "liable for damages caused by Tortfeasor." (Doc. 5-1 ¶¶ 36–42.) As Gonzalez concedes, while Tortfeasor's negligence is relevant to whether he has a valid UIM claim, Gonzalez cannot sue BITCO for Tortfeasor's negligence as an independent cause of action. (Doc. 12 at 9 (citing *Fava v. Liberty Mut. Ins.*, No. 1:17-cv-0456 WJ/LF, 2019 WL 133269, at *6–7 (D.N.M. Jan. 8, 2019); *Ambassador Ins. v. St. Paul Fire & Marine Ins.*, 690 P.2d 1022, 1025 (N.M. 1984)).) Accordingly, the negligence claim in Count I is DISMISSED as a separate cause of action, but Gonzalez may file an amended complaint and clarify the relevance of these allegations as they relate to the other counts.

**B. Breach of Contract - Underinsured Motorist Benefits Claim (Count II)**

Under New Mexico law, to state a claim for breach of contract a plaintiff must plead facts to show "the existence of a contract, breach of the contract, causation, and damages." *Apodaca v. Young Am. Ins.*, 702 F. Supp. 3d 1094, 1145 (D.N.M. 2023) (quoting *Abreu v. N.M. Child., Youth & Fams. Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011)). Gonzalez's complaint alleges that Defendants breached the insurance contract by failing to pay UIM benefits that he is entitled to under the contract. Defendants argue that: (1) Gonzalez fails to state a claim because he did not plead facts showing that he is entitled to UIM benefits; (2) his claim is unripe because he has not yet established "by legal means" that he is "legally entitled" to recover damages from the Tortfeasor; and (3) the pleadings establish that Gonzalez failed to comply with the contract's notice requirements, which precludes coverage. (Doc. 5 at 10–13.)

Pursuant to New Mexico's uninsured motorist statute, N.M. Stat. Ann. § 66-5-301, an insurer is required to provide coverage to compensate an insured when they are "injured in an accident and the tortfeasor is either uninsured or underinsured." *See State Farm Mut. Auto. Ins. v. Safeco Ins.*, 298 P.3d 452, 454 (N.M. Ct. App. 2013) (citation omitted). "[T]he legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance." *Chavez v. State Farm Mut. Auto. Ins.*, 533 P.2d 100, 102 (N.M. 1975) (quotation omitted). New Mexico courts have always "interpreted the uninsured motorist statute liberally 'to implement [the] purpose of compensating those injured through no fault of their own.'" *Ullman v. Safeway Ins.*, 539 P.3d 668, 678 (N.M. 2023) (quoting *Chavez*, 533 P.2d at 102).

At issue here is whether Gonzalez has stated a valid claim for UIM coverage under his policy with BITCO. An "underinsured motorist" is defined as "an operator of a motor vehicle with respect to the ownership, maintenance or use of which the sum of the limits of liability under all bodily injury liability insurance applicable at the time of the accident is less than the limits of liability under the insured's uninsured motorist coverage." N.M. Stat. Ann. § 66-5-301(B). To determine "whether an injured insured has a UIM claim, one must determine both the tortfeasor's liability limits and the insured's total UIM coverage, which may include multiple stacked policies." *State Farm Mut. Auto. Ins.*, 298 P.3d at 454.[2] Then, "[u]nder Section 66-5-301, an injured insured whose total damages exceed the liability proceeds received from the tortfeasor is entitled to recover the difference from the insured's UIM carrier, at least up to the limits of his UIM coverage." *Farmers Ins. of Ariz. v. Sandoval*, 253 P.3d 944, 950 (N.M. Ct. App. 2011).

Additionally, beyond showing that the UIM "was at fault and the insured suffered damages[,]" an insured must also show that they are "legally entitled to recover damages" from the UIM. *Ortiz v. Safeco Ins. of Am.*, 207 F. Supp. 3d 1216, 1219 (D.N.M. 2016) (quoting N.M. Stat. Ann. § 66-5-301(A); *State Farm Mut. Auto. Ins. v. Maidment*, 761 P.2d 446, 450 (N.M. Ct. App. 1988)). To be "legally entitled to recover damages[,]" the insured must "prove the elements necessary to establish an action in negligence: duty, breach, proximate cause, and loss or damages." *Maidment*, 761 P.2d at 450 (quotation omitted). And "in resisting an uninsured motorist

---

[2] "The term 'stacking' refers to an insured's attempt to recover damages in aggregate under more than one policy or one policy covering more than one vehicle until all damages either are satisfied or the total policy limits are exhausted." *State Farms Mut. Auto. Ins. v. Safeco Ins.*, 298 P.3d 452, 454 (N.M. Ct. App. 2013) (quoting *Morro v. Farmers Ins. Grp.*, 748 P.2d 512, 513 (N.M. 1988)). The New Mexico Supreme Court has held that stacking is required when multiple premiums are charged for UIM coverage on multiple vehicles, and that insurers must obtain a clear, written rejection of stacking from the insured to avoid it. *Montano v. Allstate Indem. Co.*, 92 P.3d 1255, 1260 (N.M. 2004). "The public policy in support of stacking in New Mexico has always been tied to the notion that it is unfair not to allow stacking when multiple premiums are paid." *Rehders v. Allstate Ins.*, 135 P.3d 237, 245 (N.M. Ct. App. 2006) (quotations marks and citation omitted). While Gonzalez argues that stacking applies (Doc. 12 at 7–8), his complaint does not contain any factual allegations regarding the availability of stacking.

claim, the insurer would have available to it, in addition to policy defenses compatible with the statute, the substantive defenses that would have been available to the uninsured motorist." *Id.* (citation omitted). While "[t]his does not mean the insured has to bring a direct action against the uninsured motorist before making a claim under the coverage[,]" it does "require[] that the determination of liability be made by legal means" before coverage is established. *Id.* (citation omitted) (noting arbitration can be one "legal means of establishing the right to recovery"); *see also State Farm Mut. Auto. Ins. v. Barker*, 96 P.3d 336, 339 (N.M. Ct. App. 2004) ("By the terms of the insurance policy, the obligation to pay the claim did not arise until after the arbitrators established what [the insured] was 'legally entitled to collect' from the uninsured motorist."); *Brooks v. State Farm Ins.*, 154 P.3d 697, 701 (N.M. Ct. App. 2007) ("We agree with the line of cases holding that the limitations period for seeking UIM coverage does not begin to run until there is a justiciable claim based on a 'failure to do that which is required under the terms of the policy.'") (quotation omitted).

**1. Gonzalez's Claim for Breach of Contract for Failure to Pay is not Ripe.**

Most consequentially, Defendants argue that Gonzalez's claim as presented is not ripe because damages have not been legally determined. (Doc. 5 at 10–13.) Defendants rely on *Crumley v. State Farm Mut. Auto. Co.*, 707 F. Supp. 3d 1116, 1121 (D.N.M. 2023), which held that where an insured has not yet determined the legal liability of the UIM, a breach of contract claim for failure to pay UIM coverage is not ripe. (*Id.*) *See also Lucero v. State Farm Mut. Auto Ins.*, No. 1:24-cv-1068 PJK/JMR, 2026 WL 2255078, at *4 (D.N.M. Aug. 5, 2026) (finding that the insurance policy at issue required as a "condition precedent" that the legal liability and damages be established in order to claim UM/UIM benefits and that "[s]uch a condition precedent is in accordance with the principle of New Mexico law requiring the insured party to establish all

elements of the UM's negligence, including damages, before recovering benefits from the insurer."). *Crumley* began with a discussion of the New Mexico caselaw that described the requirement that an insured must be "legally entitled to recover damages" from the underinsured motorist as a condition precedent to being entitled to recover UIM benefits. *Crumley*, 707 F. Supp. 3d at 1121–22 (citing, *e.g.*, *Hendren v. Allstate Ins.*, 672 P.2d 1137, 1141 (N.M. Ct. App. 1983); *Ortiz*, 207 F. Supp. 3d at 1219; N.M. Stat. Ann. § 66-5-301(A); *Maidment*, 761 P.2d at 450). *Crumley* held that a breach of contract claim was not ripe where there had been no determination that the underinsured motorist was legally liable to the plaintiff because such a determination was a condition precedent to the insurer's obligation to pay under the contract. *Id.* at 1122–23 (citing *Ibarra v. Allstate Fire & Cas. Ins.*, No. SA:20-cv-0280 JKP, 2020 WL 3259806, at *3 (W.D. Tex. June 16, 2020) (addressing similar factual scenario and finding that the breach of contract claim was unripe under Texas law)).

Gonzalez first argues that *Crumley* is distinguishable because the tortfeasor's liability in that case was genuinely undetermined, whereas here Tortfeasor's insurance accepted liability and paid a settlement. (Doc. 12 at 12.) This is incorrect: in *Crumley*, the plaintiff had been compensated the full amount of the underinsured motorist's liability coverage prior to the litigation with his insurance company. *See Crumley*, 707 F. Supp. 3d at 1118. At issue in *Crumley* was not whether the underinsured motorist was liable for *some* damages, but the *amount* of those damages. *Id.* at 1123 ("Here, Mr. Castillo's liability—or, at a minimum, the extent of Mr. Castillo's liability—is in dispute, as Defendants have asserted comparative negligence/comparative fault as an affirmative defense to liability."). The same is true here. Gonzalez does not argue that the amount at which Tortfeasor's insurer settled was the extent of the damages he is "legally entitled" to receive, because then he would have no claim for UIM benefits at all.

Gonzalez also argues that *Crumley* is not binding on this Court, and that the Tenth Circuit and New Mexico courts have not "squarely adopted this framework." (Doc. 12 at 13.) *Crumley*'s holding relied heavily on the analysis from *Ibarra*, which applied Texas insurance law. *See Crumley*, 707 F. Supp. 3d at 1122–23 (citing *Ibarra*, 2020 WL 3259806 at *3). Gonzalez argues that New Mexico insurance law provides a different framework: where Texas law requires a judgment for establishing a tortfeasor's liability and damages, New Mexico law allows liability to be established through "legal means" including settling a direct claim with the tortfeasor. (Doc. 12 at 13 (citing *Maidment*, 761 P.2d at 450).) But the *Maidment* decision only discussed two potential "legal means" of establishing that the insured is "legally entitled to recover damages": by direct action against the uninsured motorist or by arbitration with the insurance company. *Maidment*, 761 P.2d at 450. And, as noted above, Gonzalez is not claiming that his settlement with Tortfeasor established the total damages he was "legally entitled to recover." The Court does not find that Texas insurance law differs in any meaningful way from New Mexico insurance law that would make the analysis in *Ibarra* questionable as applied under these circumstances.

Relatedly, Gonzalez asks the Court to consider whether he is "legally entitled to damages" as an element of the breach of contract claim to be addressed under Rule 12(b)(6)'s standard, not as a ripeness issue. (Doc. 12 at 13.) However, New Mexico law describes that a finding that plaintiff is "legally entitled to damages" is a condition precedent to liability—meaning it must be established *before* the duty to pay under the contract arises. *See, e.g.*, *Maidment*, 761 P.2d at 450. Until a duty to pay exists, there can be no breach of contract for failure to pay. While Gonzalez alleges in Count III that Defendants failed to perform their implied duties under the contract in ways other than failure to pay, (*see, e.g.*, Doc. 5-1 ¶¶ 72–74 (generally noting that an insurer cannot fail to timely investigate and evaluate the claim and cannot unreasonably delay notification to a

policyholder that a claim will be paid or denied)), Count II raises only a failure to pay claim, which is not ripe.

In *Crumley*, the court found that the case should be dismissed for lack of subject matter jurisdiction because the plaintiff had not brought a wrongful death claim, because the underinsured motorist's liability had not otherwise been resolved, and because the time to amend pleadings had already expired. *Crumley*, 707 F. Supp. 3d at 1122. Here, the time to amend the pleadings has not expired. Moreover, the Court notes that a declaratory judgment establishing liability is often filed within a lawsuit alleging breach of contract and bad faith claims. *See, e.g.*, *Brooks*, 154 P.3d at 703 ("Plaintiffs filed the current action for declaratory judgment and to compel arbitration, required under the policy where the parties fail to agree on the value of a UM/UIM claim."); *Jaramillo v. State Farm Mut. Auto. Ins.,* Case No. 2:25-cv-0933 DLM/KRS, 2026 WL 393002, at *2 (D.N.M. Feb. 12, 2026). Indeed, to some extent, Gonzalez appears to have attempted to structure his complaint in this way by filing a negligence claim. The parties have not suggested any reason that Gonzalez cannot seek a declaratory judgment establishing liability in this lawsuit, but at this time the Court makes no ruling and expresses no opinion on whether such a procedure would be allowed. Accordingly, the Court dismisses Count II for lack of subject matter jurisdiction, but leave to amend will be granted.

**2. Gonzalez Failed to Plead Sufficient Damages to Show UIM Coverage was Triggered.**

Defendants also argue that Gonzalez failed to plead sufficient facts to state a claim that he is entitled to UIM coverage from BITCO because he did not allege that his damages exceeded what he received from the settlement with the Tortfeasor. (Doc. 5 at 6–7.) *See also Farmers Ins. of Ariz.*, 253 P.3d at 950. While Gonzalez provides additional facts in his response to address this element, he must assert those facts within the four corners of the complaint to survive a motion to

dismiss. As pleaded, Gonzalez has not alleged that his damages exceeded the settlement amount, so he fails to show that his UIM coverage was triggered. Accordingly, in addition to dismissal for lack of subject matter jurisdiction, Count II is also dismissed for failure to state a claim under Rule 12(b)(6).

**3. Gonzalez Pleads Sufficient Facts to Show that Notice Requirements Were Met or Waived.**

Defendants finally suggest that Gonzalez fails to state a claim in Count II because his pleadings establish that he failed to comply with the notice requirements in the contract. (Doc. 5 at 7.) Pursuant to the insurance policy, BITCO agrees to pay damages arising out of an accident with an underinsured motorist only if the "limit of any applicable liability . . . policies ha[ve] been exhausted by payment of judgments or settlements" or "[a] tentative settlement had been made between an 'insured' and the insurer of" an underinsured motor vehicle and BITCO has been "given prompt written notice of such tentative settlement" and has "[a]dvanc[ed] payment to the 'insured' in an amount equal to the tentative settlement within 30 days after receipt of notification." (Doc. 6 at 36–37.) Gonzalez did not plead that the settlement exhausted the limit of Tortfeasor's available liability policies, so BITCO argues Defendants were entitled to 30 days' notice of the tentative settlement. (Doc. 5 at 7.) Gonzalez's pleadings establish that he requested authority to settle with Tortfeasor on February 21, 2025, and then settled on March 14, 2025. (Doc. 5-1 ¶¶ 28, 30). Because this was only 21 days later, BITCO argues that Gonzalez does not have a valid UIM claim. (Doc. 5 at 7.)

Yet failure to comply with the notice requirements in the contract does not automatically defeat UIM coverage. On the contrary, an insurer may waive its right to enforce a consent-to-settle clause when it "has received notice of a proposed settlement between its insured and a third-party tortfeasor, but fails to notify its insured of the insurer's decision to either grant or withhold consent

to settle within a reasonable amount of time . . . ." *Thayer v. State Farm Mut. Auto. Ins.*, 538 P.3d 509, 510 (N.M. Ct. App. 2023). Moreover, "[b]ecause avoiding prejudice is the purpose of notice provisions, under our law the enforceability of a contract provision limiting when a claim for benefits under the contract can be brought by an insured depends on whether the insurer has been prejudiced by the insured's failure to comply with such a provision." *Whelan v. State Farm Mut. Auto. Ins.*, 329 P.3d 646, 651 (N.M. 2014) (citations omitted); *see also Roberts Oil Co. v. Transamerica Ins.*, 833 P.2d 222, 231 (N.M. 1992) (noting that "even when there has been a substantial and material breach of the insured's obligation and a resulting failure of a condition precedent to the insurer's liability, that breach and nonoccurrence of condition does not discharge the insurer absent a showing that the insurer has been substantially prejudiced").

Notably, Gonzalez also alleges that BITCO was given notice of Gonzalez's attempt to settle in December 2023 and that Gonzalez first sought consent to settle at that time in both emails and phone calls. (Doc. 5-1 ¶¶ 18–30.) Gonzalez further alleges that Defendants received all the information requested by email on February 21, 2025, but never responded to the email. (*Id.* ¶¶ 28–29.) Accordingly, the Court finds that Gonzalez has plausibly alleged that the notice requirements were met based on the December 2023 request for consent and/or that BITCO's actions waived enforcement of the consent-to-settle clause. Nonetheless, Defendants' motion to dismiss Count II is granted for the other reasons Defendants presented.

**C. Breach of the Implied Duty of Good Faith and Fair Dealing (Count III)**

Defendants argue that Gonzalez's claim of breach of the implied duty of good faith and fair dealing should be dismissed because they are based on conclusory assertions without factual support. (Doc. 5 at 13–16.) "[A]n insurer can act in bad faith in its handling of a first party claim for many reasons." *Ortiz*, 207 F. Supp. 3d at 1218 (citations omitted). Here, Gonzalez appears to

allege a bad faith claim based on failure to pay and possibly a failure to timely investigate and to not unreasonably delay notification to the policyholder regarding whether a claim will be paid or denied. (Doc. 5-1 ¶¶ 71, 73–74, 77; *see also* Doc. 12 at 15–16.)

Under New Mexico law, "claims of bad faith to pay 'cannot arise unless there is a contractual duty to pay under the policy.'" *Albuquerque Ambulatory Eye Surgery Ctr. LLC v. Transp. Ins.*, 566 F. Supp. 3d 1178, 1196 (D.N.M. 2021) (quoting *Haygood v. United Servs. Auto. Ass'n*, 453 P.3d 1235, 1241 (N.M. Ct. App. 2019)); *see also OR&L Constr., L.P. v. Mountain States Mut. Cas. Co.*, 514 P.3d 40, 51 (N.M. Ct. App. 2022) ("[A]n insured cannot raise a claim of bad faith based on an insurer's failure to pay a covered claim unless the insured can establish that coverage exists.") (citation omitted). Because Gonzalez has not included sufficient facts in his complaint to show that Defendants had a duty to pay UIM benefits, he has not stated a bad faith claim.

Moreover, Gonzalez has not pleaded sufficient facts to show that Defendants' conduct could be considered bad faith even if it included allegations establishing UIM coverage. "[A]n insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded." *Sloan v. State Farm Mut. Auto. Ins.*, 85 P.3d 230, 236 (N.M. 2004) (citation omitted). "Unfounded does not mean erroneous or incorrect; it refers to conduct akin to reckless disregard, where the insurer utterly fails to exercise care for the interests of the insured in denying or delaying performance, amounting to an utter or total lack of foundation for asserting non-liability." *Bd. of Cnty. Comm'rs of Cnty. of Bernalillo v. Centurion Det. Health Servs., LLC*, No. 1:23-cv-1103 SMD/KK, 2025 WL 2784961, at *6 (D.N.M. Sept. 30, 2025) (quotation marks and citation omitted).

Gonzalez argues that his complaint contains specific non-conclusory allegations to support his bad faith claim. Specifically, he argues that his complaint establishes that "[o]n February 21, 2025, [Gonzalez] sent BITCO complete medical records, a detailed billing spreadsheet, and an explicit consent request; BITCO provided no response for over three weeks despite having promised review since December 2023 . . . ." (Doc. 12 at 15.) While Gonzalez's complaint alleges that Defendants were aware that Gonzalez sought UIM coverage and consent to settle as early as December 2023, it also alleges that Defendants asked for additional information to review Gonzalez's claim. (Doc. 5-3 ¶¶ 19, 24.) And, the complaint indicates that the complete information Defendants had asked for was not sent to them until February 21, 2025. (*Id.* ¶ 28.) The complaint does not indicate the information requested was unreasonable or unnecessary for Defendants' review of the claim such that delaying their decision on the UIM claim until they received the information would make would their conduct "akin to reckless disregard . . . ." *See Bd. of Cnty. Comm'rs of Bernalillo*, 2025 WL 2784961, at *6 (quotation omitted). Put simply, Gonzalez has not included allegations to show that Defendants had sufficient information to review the claim or otherwise determine whether to consent to settlement prior to February 21, 2025. Gonzalez does not explain why it was unreasonable or unexpected that Defendants did not respond within three weeks nor is any explanation implied within the factual allegations. *See Hauff v. Petterson*, 755 F. Supp. 2d 1138, 1145 (D.N.M. 2010) ("To survive summary judgment on this claim, Mr. Hauff must cite evidence tending to show that Safeco's actions were based on a 'dishonest judgment' and that it 'failed to honestly and fairly balance its own interests' with Mr. Hauff's."). Accordingly, the Court finds that Gonzalez fails to allege facts sufficient to support his claim of breach of the implied duty of good faith and fair dealing, and Defendants motion to dismiss as to count III is GRANTED.

**D. New Mexico Unfair Insurance Practices Act (Count IV)**

Defendants next argue that Gonzalez fails to state a claim under the New Mexico Unfair Insurance Practices Act (UIPA), N.M. Stat. Ann. § 59A-16-20. The UIPA imposes liability for various unfair insurance practices "knowingly committed or performed with such frequency as to indicate a general business practice," including the two Gonzalez raises here: "failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies[,]" § 59A-16-20(B), and "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear[,]" § 59A-16-20(E). (*See* Doc. 5-1 ¶ 82.)

While this section of the complaint contains few factual recitations, Gonzalez incorporates the prior allegations in the complaint. (Doc. 5-1 ¶ 80). Accordingly, Gonzalez argues that his claim is supported by his allegations that "BITCO failed to acknowledge or substantively respond to at least two explicit written consent requests—in December 2023 and February 21, 2025" (Doc. 12 at 18 (citing Doc. 5-1 ¶¶ 21, 29),) even though "[b]y February 2025, liability in the underlying claim had become reasonably clear: the tortfeasor's insurer had offered $900,000, [Gonzalez] had provided complete medical documentation, and the only remaining variable was the comparative fault reduction, a factor Defendant BITCO itself was notified of in writing" (*id.* (citing Doc. 5-1 ¶¶ 28–30)). Gonzalez also specifically alleges that Defendants willfully engaged in the two unfair practices "with such frequency as to indicate that such conduct is Defendant BITCO's general business practice." (Doc. 5-1 ¶¶ 82–83.)

Defendants argue that "[Gonzalez] cannot simply conclude they are common business practices of BITCO because they happened in this case." (Doc. 13 at 3.) However, Gonzalez needed to plead facts showing that that Defendants *either* "knowingly committed" the relevant

unfair claims practice *or* that that the practice was "performed with such frequency as to indicate a general business practice . . . ." N.M.S.A. § 59A-16-20. While Gonzalez's allegations on the latter point may be conclusory, Defendants' knowledge of their own actions can be inferred by the allegations in the complaint.

Nonetheless, the complaint's factual allegations are insufficient to allege that Defendants "fail[ed] to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies . . . ." *See* § 59A-16-20(B). Gonzalez claims that his complaint alleges that "BITCO failed to acknowledge or substantively respond to at least two explicit written consent requests—in December 2023 and February 21, 2025." (Doc. 12 at 18 (citing Doc. 5-1 ¶¶ 21, 29).) However, the complaint does not indicate that Defendants "failed to acknowledge or substantively respond" to requests in December 2023. Rather it states that Defendants asked for additional information. (Doc. 5-1 at ¶¶ 19, 24.) As alleged in the complaint, much of the delay in communications between Gonzalez and Defendants was due to waiting for the additional records and information Defendants had requested in order to review the claim and determine whether to consent to the settlement. (*Id.* ¶ 25.) And, as stated above, Gonzalez has not included any allegations that would imply requesting this information was unreasonable or that withholding consent prior to receiving the information would have been unreasonable.

Gonzalez has also failed to demonstrate that BITCO violated the UIPA by "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims *in which liability has become reasonably clear* . . . ." § 59A-16-20(E) (emphasis added). As discussed above, Gonzalez's allegations are insufficient to show that he is entitled to receive compensation under his UIM claim or whether (let alone when) liability had become reasonably clear. While Gonzalez's response indicates that he has additional information regarding his claims and the

information that was previously provided to Defendants, this information is not included in his complaint. Accordingly, the Court finds that Gonzalez fails to state a cause of action under the UIPA.

**E. Unfair Trade Practices Act (Count V)**

Gonzalez's last count asserts a claim for violations of the New Mexico Unfair Trade Practices Act (UPA), N.M. Stat. Ann. § 57-12-1. "The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services." *Fava*, 2019 WL 133269, at *2 (quoting *Diversey Corp. v. Chem-Source Corp.*, 965 P.2d 332, 338 (N.M. Ct. App. 1998)). A UPA claim has four elements: (1) the defendant made a false statement, (2) the defendant made the statement in connection with the "sale . . . of goods or services" and knew that the statement was false, (3) the defendant made the statement in the regular course of trade or commerce, and (4) the statement was one which "'may, tends to, or does[] deceive or mislead any person.'" *Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (N.M. 1991) (quoting *Ashlock v. Sunwest Bank of Roswell, N.A.*, 753 P.2d 346, 347 (N.M. 1988)).

Defendants argue that a UPA claim is a fraud claim and, therefore, must meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b). (Doc. 5 at 19.) Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." However, "[u]nlike a cause of action for fraud, the UPA requires neither inducement nor reliance." *Charlie v. Rehoboth McKinley Christian Health Care Servs.*, 598 F. Supp. 3d 1145, 1162 (D.N.M. 2022). Accordingly, the Court does not find that Rule 9(b)'s heightened pleading standard applies.

Nevertheless, Gonzalez's complaint does not state a claim under Rule 12(b)(6). At the core of a UPA claim is a false statement. Here, Gonzalez merely states that he "was deceived by the unfair and deceptive trade practices and unconscionable trade practices of Defendants and would not have purchased insurance from Defendant BITCO had they been made aware of Defendant BITCO's claim policies." (Doc. 5-1 ¶ 86.) In his response brief, Gonzalez also states that he:

> alleges BITCO marketed insurance products with representations about claims-handling quality; made those representations knowingly in connection with selling insurance; does so in the regular course of business; and that such representations tend to mislead consumers who rely on them in deciding whether to purchase coverage. The failure to deliver on those representations, culminating in a fourteen-month non-response followed by a forced settlement without consent, constitutes the unfair trade practice.

(Doc. 12 at 20). However, these allegations do not appear in the complaint, nor does Gonzalez even attempt to cite to the complaint to support this statement. In the four corners of the complaint, Gonzalez does not plead that a false statement was made by either of the Defendants, let alone identify the false statement or when it was made. Accordingly, the Court GRANTS Defendants' motion to dismiss Count V of the complaint.

### F. Punitive Damages

Gonzalez also alleges he is entitled to punitive damages for Count III (bad faith claims) and Count V (Unfair Trade Practices), but Defendants argue that Gonzalez has not alleged sufficient facts to support an award of punitive damages. (Doc. 5 at 22.) Because the Court finds that Gonzalez fails to state a cause of action in Count III or Count V, the claims for punitive damages are dismissed as well.

## IV. CONCLUSION

For the reasons above, the Court finds that all five counts in Gonzalez's complaint fail to state a cause of action and must be dismissed pursuant to Rule 12(b)(6) and/or Rule 12(b)(1).

Gonzalez initially filed his complaint in New Mexico state court, which maintains a less stringent pleading standard than federal court. *See* N.M.R.A. Rule 1-008(A)(2) (requiring that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Madrid v. Vill. of Chama*, 283 P.3d 871, 876 (N.M. Ct. App. 2012) (criticizing the federal pleading standard under *Iqbal*, 556 U.S. 662 and *Bell Atl. Corp.*, 550 U.S. 544). Accordingly, the Court finds that Gonzalez should be allowed to amend his complaint in accordance with this Opinion and the federal standard that requires more specific factual allegations. Additionally, the Court finds that Gonzalez should be given an opportunity to amend because this case is in its early stages and discovery has not yet commenced.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 5) is **GRANTED.** Gonzalez shall be allowed **30 days** from the entry of this Order to file an amended complaint. Defendants shall respond to the amended complaint within **15 days**.

DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*